We have four all-use cases this morning. The first is No. 23-1578, GeoComply Solutions Inc. v. XPoint Services. Mr. Lillard. May it please the Court. GeoComply's founder solved an elusive problem in computer networks how to securely and reliably determine online user locations in the face of geolocation spoofing. The claims here are directed to her technological advance in solving that problem, technology that GeoComply employs in its award-winning products used by household names to prevent online fraud. Because Section 101 permits patenting such a technological advance to a technological problem, the Court should reverse. I'd like to jump straight to the claims at Appendix 58 because I think it's uncontested at this point that spoofing is a technological problem in computer networks. The District Court says that at Appendix 21, and so does the red brief at page 25. And so the core dispute here is whether these claims are properly characterized as identifying a specific advance in solving that problem. And they are. The claims are based on a computer configuration, a network configuration of three components. A user's device, a first server, which is the Internet service provider, and a second server, which is the... How does Claim 1 deal with spoofing as opposed to Claims 7 and 8? I mean, it just says a selected program, any program. So I'd like to get to the 7 and 8 point, or claims at some point. But as to Claim 1, the way it identifies, the way it addresses the problem of spoofing is with three steps. Identification of the presence of selected programs. Generation of a geolocation message that's based on the identified present programs. Did you ask for a construction of Claim 1? No, but I don't think that... I mean, I don't understand how selected program gets you to spoofing programs. Let me just step back one second and explain the problem of geolocation spoofing. I understand the problem. I think, just want to take one second, because I think actually the other side has not stated it as correctly as it needs to be. The problem of geolocation spoofing is not that you have inaccurate information about where the device is located. You may be very certain that the device is in Philadelphia. The problem is that it's exceedingly easy on the Internet for users to operate devices remotely. I understand. So even if you know the device is in Philadelphia, you need to know where the user is. How does Claim 1 deal with it? The way Claim 1 deals with it is to go beyond just collecting information about where the device is. It's just a program, any program. It collects a specific type of information, which is the presence of selected programs, and then it generates a geolocation message based on both. And the patent explains, Judge Wright, how that's an advance and how that solves the problem. Because when you have the present programs plus the information about where the device is located, then you can do things like create a trust or a reliability score that tells you, here's where the device is, but also here's how confident I am that the user is with the device. And yes, it can be specific types of programs which are specified in Claim 7 and 8, such as a spoofing program or a screen sharing program. But I think one of the reasons why the claims and the invention is not necessarily limited to just those programs is what the district court recognized. This is a cat and mousing game. You have users online who are continuously updating and changing how they are trying to evade the problem and how they are conducting spoofing. And so in that context, it's important. I just don't see how Claim 1 is addressed to that. I see how Claim 7 and 8 may be, but I don't see how Claim 1 is addressed to that. I think, I'll try one more time on Claim 1, but then I'll switch to Claim 7 and 8. So I think it's just like in SRI or TxEC. It's the combination here that provides the advance. So in SRI, the claims did not specify what analysis you performed. It had to be an analysis performed on certain types of network traffic, and then you generated reports based on that analysis. But the claims didn't limit the analysis nor the reports, and they didn't actually say what you did with the reports. Nevertheless, the patent explained how collecting that information in the way that it was described in the claims and generating and compiling the reports was an advance in solving the problem of coordinated attacks. It's the same here. The patent explains how you can use the identification of selected programs with the device's location information to go beyond just saying, this is where the device is, to saying, this is also, I'm confident that the user is with the device. But even if you disagree with me on Claim 1, I do think Claims 7 and 8 are more specific and do identify specific types of programs that would be associated with spoofing it and that can be used. Your first problem is the waiver. I mean, I didn't see you arguing in your briefs before the district court that this made the idea less abstract. You sort of lumped Claims 7 and 8 in with 1, and then you didn't really separately argue as to the judge specifically found at Step 2. So I think you've got a forfeiture problem. I think two responses on that, Judge Icke. First, the district court found forfeiture only at Step 2. It did not say — I understand, but you didn't argue separately at Step 1. And so on that point, we did argue separately at Step 1. And so first, I think if you look at what the other side said, it's their burden, and they're burdened on all claims. I'm not sure whether you argued separately at Step 1. Yes. So theirs is at 227 to 228, and all they say there is the dependent claims add nothing new, and then they quote the claim language. So that's what we were responding to, and our response is at page 311, Appendix 311. And this is in — Judge Icke, this is in our — Yeah, all you've got — — Alice Step 1. All you've got is this footnote 1 here. No, it's the text and the footnote. So it's the top paragraph there. We start the paragraph, Geocompliance methods also involve collecting and analyzing information that lends context to the geolocation data. So it's explaining, we're not just looking at where is the device located, we're adding context, and then says, instead of accepting the geolocation data at face value, the method entails identifying that one or more selected programs, such as geolocation spoofing programs, are present on the user device. These programs may include a proxy application or a screen-sharing program. In that paragraph, we call out only four claims. The two independent claims, claims 1 and 10, and then claims 7 and 8 specifically, and we're not just quoting the language, we're — Where do you explain that it does identify what the claims say, but where does it say that that makes them non-abstract? It's the — I think it's two parts. One is it's what we're responding to, which was a blanket assertion that the claims add nothing. And then two, it's the context of this paragraph as a whole, which is explaining how the invention adds context to just, I know geolocation data about the device, I need something more. And the way it adds context, it specifically points to claims 7 and 8 as adding that important context that amounts to a technological advance in solving this problem of spoofing. And then there is the footnote, which specifically says, we disagree with treating these claims as representative in the context of what we were responding to, which was just a blanket assertion that all claims could rise and fall together. I think this was sufficiently specific. The district court never disagreed with that. It only said at step 2 that it didn't see an argument about claims 7 and 8, and I think — so that was not the basis of the district court's decision, and I think it's not a basis for a decision here. I do want to also address step 2. I think the technological advance to a technological problem shows that we're sufficiently inventive, or that we're not abstract at claim 1, but it also shows that there's an inventive concept here. I think DDR and CosmoKey are on-point examples where the court has recognized that you can have an inventive concept that comes from the combination of steps. And here it's the combination. It's identifying the presence of selected programs on the device and generating a geolocation message that's based on both of the device geolocation data and the identified programs. That is the advance that allows you to get beyond just knowing here's where the device is to knowing here's how confident I can be that the user is with the device. The patent on its own, I think, makes clear that's an inventive concept. So is achieving that result anything other than just using conventional programming? Yes. You're basically saying here's what it does, but the question is, is it affecting the functionality of these devices in any way? In a technical way? Yes, Judge Clevenger. It's improving the computer network itself. I think the complaint at paragraphs 12 and 13 in Appendix 72 makes clear prior to our approach... Wouldn't that just mean that any conventional software improves the computer? No. I think for two reasons... What's specific about this software that tells the computer to do something it didn't otherwise want to do or that is extremely unconventional? So I think it's specific in two ways. One, it's rooted in this problem that is a problem specific to computer networks, which is that you can easily operate devices remotely. And two, it requires specific order of steps that are designed... Using conventional software to solve complicated problems, in many cases in the past, has been rejected as a ground for satisfying step two. Judge Clevenger, I think the key here... Are you right about that? I think there are cases on both sides, Judge Clevenger, that certainly if all you're doing is using routine technology, computer technology, in the way that it's been used, then yes, that's abstract and not inventive. But this court has been clear that the unconventionality can be in the combination, and that's the key here. We have not said that identifying programs on its own, that this is some better way to identify programs on a device. What we have said, and I think maybe a helpful example is... We haven't invented a specific way to identify proxy programs or anything like that. No, we've invented a specific way... We've come up with the idea, this is one way of determining whether a user is operating something remotely. We've invented a specific way of dealing with the problem of geolocation spoofing, which is maybe similar to what you're saying, but not exactly the same in that... You don't want me to use the word idea, you want to use the word way. Because if it's an idea, it's abstract. I think what the court's concerns about... I think the difference that the court's cases make clear between whether you're just claiming a result or whether you're claiming a way to solve the problem is when you just claim the basic steps that would necessarily be a part of any solution. I'm a little confused about your Step 2 argument, because it seems to me that if we disagree with you at Step 1, that these are all just abstract ideas and you haven't identified anything specifically eligible. Why using abstract ideas in a particular way is patent eligible? I think answering that question starts with what is the abstract idea? The district court said the abstract idea was just determining a device's location using multiple types of information or using the device location information and... Do you agree that's abstract? I think that could be abstract, but that's not actually what's going on here. We're not determining just the device's location. That's the problem with spoofing. When you have spoofing, if all you do is... So we'd be clear about this? Yes. Putting aside the supposed solution to the spoofing problem and just identifying the location, that itself is abstract, right, and not patent eligible. I mean, we've said that in our non-precedential decision. There are cases dealing with location. Are you challenging that? Are you saying that identifying location is itself patent eligible? No, I'm saying this case is different. Wait. Yes or no? No, I'm not challenging this Court's conclusions in those cases, Judge Dyke. I am challenging that this case is like those cases, because in this case, we're not simply saying, use more information, use different types of... You're saying that this is different because of the spoofing aspect. Because there's a computer network-specific problem, and the claims identify a way of solving that. It's not a technological problem. As my colleagues have said, there's no change in computer programming that's disclosed here, right? It's a technological problem in the same way SRI presented a technological problem. People are taking advantage of the way networks are configured that make it very easy to remotely operate devices to conceal their identity or, sorry, their location. But it is correct, is it not, that there's no change to computer programming? The unconventionality here is an improvement in the computer network itself, akin to SRI. I don't understand that at all. Isn't the only change is you determine that there's a number of programs, like proxy programs and other things, that are indicators that something nefarious is going on, and that the device might be operated remotely. So you're just programming it to look for those programs. You're combining that information with the device's location to identify the potential fraud, but that's just exactly what this court upheld in SRI. It was the same thing. People were taking advantage. Users took advantage of the nature of the network to create problems with coordinated attacks, and the claims identified a specific way to resolve that. And to the point about specificity, I think that what this court has said about whether you're just claiming a result or whether you're claiming a way to solve it is that when all you do is claim the basic steps that would be part of any solution to the problem, then you're claiming the result. I look at your brief, and I don't see any of that in here. I just don't see that you made this argument in the articulate way that you've just made it to the district court, either at step one or step two. And, you know, that's a problem. I think the district court certainly understood that our argument was that geolocation spoofing is a network-specific problem. In fact, the district court agreed with that at appendix 21, and then the district court understood we were arguing that this was a solution to that problem. I think where the district court got it wrong was in saying that the abstract idea was just making a better determination about the device's location, because that overlooks the problem of spoofing, which is going beyond the device's location to figure out where the user is. I see I'm into my rebuttal time, but just to finish the point, this case is not like Dropbox, where the problem was access control, and you just claimed an access control checker. We did not claim a spoofing detection module or just a bare step of determining whether spoofing is present. We claimed one way of identifying spoofing, a very effective way, which was to look at the present selected programs on the device and combine that with the device data. All right, we're out of time. We'll give you two minutes. Mr. Swanson. Thank you, and may it please the Court, Peter Swanson from Covington & Burling, on behalf of Defendant Appellee X Point Services. The district court in this case correctly concluded that the claims of the GEOComplied patent failed to recite a patent-eligible invention under Section 101. The claimed advance is the collection and exchange of information, specifically the identity of programs on a device. The claims do not recite any improved method for collecting this data, nor do they provide for any meaningful analysis of the data once it is collected. They simply recite using it in an unspecified way for geolocation purposes. The result is not an improved computer, but rather a larger set of information. This falls squarely within the court's precedent, holding that claims directed to information gathering and analysis do not satisfy Section 101. The judgment should, therefore, be affirmed. At ALICE Step 1, the district court correctly held that Claim 1 is directed to the abstract idea of, quote, determining the location of a device based on geolocation information and programs present on the device, end quote. This is an abstract idea of It's better not to read your argument. Yes, Your Honor. That characterization of the claims is an accurate characterization of the claims, and it's an abstract idea for the reasons that Well, I think your friend says it's not just about determining the device's location, but the user's location, that sometimes the two aren't the same. If that's the case, why isn't that an improvement in technology? Yeah. That argument, I think, was made for the first time here today. I did not see that in the briefs on appeal or in the district court, and I'm not quite sure I followed that argument. But we do think that the purpose of the claims here is determining location, and the way they do that is by collecting some data. They don't provide any specific method for or improvement for how that data is collected. And they don't even provide any real analysis of the data once it is collected. It just says gather some more data that might be relevant to determining a person or a device's location. They seem to rely heavily on our SRI case. Do you want to address that? Yes, Your Honor. SRI is distinguishable because the claims were directed to a specific technique that required these multiple network monitors to look for suspicious activity and then generate reports using these other hierarchical network monitors. This court found that that was a specific technique directed to identifying intrusions into a network, and it changed the way the network itself operated. Here, GeoComply's claim has not improved the way in which programs are identified, spoofing or otherwise. I think that's a key distinction between SRI and this case. The invention in SRI was these collections of network monitors, which were not alleged to be, as far as I know, in the case, conventional. Here, GeoComply is just taking this conventional functionality for identifying programs and applying it to the context of geolocation. Also in SRI was more analysis in the claims that there actually was some suspicious activity going on. That's not happening in the GeoComply claims. It just says identify programs. It doesn't say what to do about those programs. It doesn't say anything about how do you know if the spoofing programs are actually being used to spoof location, or are they just there, but they're not actually in use. There's none of that detail in the claims. I think the third distinction is, in the GeoComply claim, it's not actually changing the functioning of a computer. Would it make any difference if the claims laid out how they were going to use this list of programs and to determine whether, for instance, the proxy program was currently running at the time in the context. A lot of this is obviously gambling outside of states where you can do it. Would it have made any difference if they laid out some kind of algorithm that says the one processor looks to determine whether a proxy is running on the user's device. If it is, then it follows some other steps to make sure that that user is actually in the location he or she claims to be, or is in some other location. Yes, Your Honor. I think that would be the type of advance that would need to be recited in the claims in order for them to be patent eligible. Alternatively, if they had come up with a better way and claimed a better way of actually identifying the programs itself, as opposed to just using conventional technology for detecting programs, that could be another way in which the claims might have been patent eligible. Instead, as I mentioned, the claims are just directed to gathering information itself. As this Court held in cases like Zillow and Electric Power Group and Vetero, claims directed to the mere gathering, transmission, and analysis of information, as opposed to the way in which information is gathered, transmitted, or analyzed, are not patent eligible. And that's what we have here. The... Would a poser know from just the term proxy programs what exactly people are talking about? I believe... At the time the patent was filed, would one be able to say, if you look in Claims 7 or 8, whichever one it is, a proxy program, we know what you're talking about. Like shelf product, we know what the algorithms would be to drive it. I do think there were no... Yes, Your Honor, I think there were no proxy programs. Then why would you have any more specificity than that in the claim? I think one issue is... If that's known, then writing a claim to having proxy programs being used in this would seem to be sufficient. I think the problem is they didn't come up with a way of identifying a proxy program or a way of figuring out... Are they shelf products or proxy programs, things you can go buy? I believe so, yes. So you just go and get the tech manual for a particular proxy program, and you've got it, and a poser would know all of that. I believe the issue here isn't... The technology here... And Claim 1 talks about using programs, right? You're looking for programs in the user's device. Yes, yes, Your Honor. Are you looking to see whether the program is available in the user's device or that the program is actually at the time being used in the device? I think that's the specificity that the claim is lacking. It just says identifying one or more present selected programs. Those programs don't necessarily have to be in use. It's just the fact that they're on a device. And that's something that isn't... If you're trying to determine location, which the claim is clearly trying to do, then if you're not asking whether or not the proxy device is functioning, you're not asking the question. I agree. It's a hypothetical question if you're just saying, well, is it on the guy's phone or not? Well, yes, no. The question is if it's on the phone to perform a function, which is to spoof. Yes, Your Honor, yes. I think that is a problem with the claim and part of the reason why the claim is not directed to... My line of questioning just is responding to your statement a minute ago that there's just not enough specificity with regard to the proxy-type program. And I wouldn't understand why, if POSA knows what you're talking about, you would need to put all that in the claim. I think the specificity that's missing from the claim, or some of the specificity that's missing from the claim is that specific way to figure out... Well, there's a first claim then, but I was talking about the dependent claims. Sure. It is what to do about, again, these programs. It just talks about collecting information that there is a program on the device. That's all it is, right? Yes, it's just collecting information. It's not determining whether it's actually operating or not. So it's using the existence of these programs that can conceal location as some kind of indicator that this transaction may be suspect, not that it actually is being used to hide location. Is that the distinction I understand you're making? That is the distinction, yes. Do you think if it actually claimed a way to detect if it was hiding location, that that might be patent eligible? Yes, Your Honor, I think that might be patent eligible. If it invented a method for determining if the proxy program is in use. Or, if it is in use, what to do about it? Should we collect some additional data to try to really make sure that the person is where they claim to be? Or should we block the program? The specification talks about what to do about it, which is create a blacklist, but that's not in the claim itself. Correct, Your Honor, yes. That is not in the claim. So let me ask that hypothetical a little bit more specifically. Let's say you have this program. It first identifies whether the phone, I'm going to speak in more specific terms, the phone has any of these suspect programs on it. If it says yes, it then tries to figure out if any of those programs are running and being used to conceal location. If it answers yes, then it either blocks the transaction or it requests further information from the user before the transaction proceeds. Do you think that would be patent eligible? Yes, Your Honor. I think that might have been a patent eligible invention had that been claimed and had they disclosed a way of determining that the program was in use in the specification. And why is that? I mean, it still seems like it's just gathering information and using that information to take certain courses of action. Is it because there might be some technological way to determine whether a program is actually running or not? That's my supposition, Your Honor, yes, is that again if they had come up with some method for doing that that wasn't already in the prior art. I mean, I'm not a computer guy. Do you have any idea whether that's something a skilled artisan would know already, that you can remotely determine whether a device is running a certain program? I would think that you probably can. I do not know the answer to that question. So I don't believe there's been any allegations as to that in the complaints or otherwise in this case. Going back to Your Honor's question about SRI, we think the claims here are much more like the claims in Universal Secure Registry in which there were several patents that the court found ineligible. Some of the claims involved just combining conventional authentication techniques, that you're using multiple authentication techniques, and there was no specificity in the claims as to how to combine them, and there was no improvement to the techniques themselves. Instead, the court just observed that the idea to use these multiple techniques only produced the expected results of greater security, and I think that's very analogous to the claims here where they've just added this information-gathering step, identifying programs, and the expected results of that. There's been no allegation that there was any unexpected results other than just we're now identifying programs and we have some additional data. I think unless the court has any other questions. Okay. Thank you, Mr. Swanson. Mr. Law, you have two minutes. Thank you. We would just respectfully ask the court to defer. Let me just take a couple of points that were discussed. First was the suggestion that we're somehow saying something different now than what we told the district court. That we're saying something different. If you look at Appendix 1529 to 1530, the district court articulates exactly the point that we've been discussing here. The district court says, if you are able to determine that he has a spoofing or screen-sharing program on his phone, for example, you can have a higher degree of confidence that he in fact is not where, or may not be where, the geolocation data would indicate he was. The district court recognized that the technological problem is the difference between where the device is and where the person is, and that you can have a higher degree of confidence with the invention here. And that's to the concessions that were made about, well, if you determine whether the program is running versus whether it's present, that's not a difference in whether something's abstract or not. Maybe there are additional... It's true that the claim doesn't tell you which it is, right? The claim does, Judge Dyke. It says that it's an identification of present programs. So the program has to be present on the device. And then you're... Wait, wait, wait. Be present on the device and running may be different. Yes. And so the claim specifies that it has to be present. It does not specify that the program has to be running. But to the point of, if running is non-abstract and a technological solution to a technological problem, then this also is. And I think it is in the way that Judge Hughes was saying. It allows a degree of confidence. If these programs are present, then you have less confidence that where the device is corresponds to where the user is. When they are not present, then you have higher confidence. And that's what the patent explains. I think the other thing that is important to keep in mind is these claims, these steps are performed within a specific network configuration where you have a second server. And the patent talks about this. You have a second server that sits in between the user's device and the first server. And that, too, allows for a higher degree of confidence in determining whether this device is where the person is where the device is. I see I'm out of time, but we'd ask that the Court reverse on all claims and at least as to Claims 7 and 8. Okay. Thank you. Thank both counsel. The case is submitted.